Stephen ROSSETTI, Petitioner, Appellee,

v.

John J. CURRAN, Chairman, Commonwealth of Massachusetts Parole Board, Respondent, Appellant.

No. 95–1978.

United States Court of Appeals, First Circuit.

Heard Jan. 10, 1996.

Decided March 21, 1996.

Elisabeth J. Medvedow, Assistant Attorney General, Criminal Bureau, with whom Scott Harshbarger, Attorney General, Boston, MA, was on brief for respondent.

Matthew A. Kamholtz with whom Matthew H. Feinberg and Segal & Feinberg, Boston, MA, were on brief for petitioner.

Before SELYA, BOUDIN and LYNCH, Circuit Judges.

BOUDIN, Circuit Judge.

In 1981, Stephen Rossetti was acquitted of armed robbery in state court. In 1982, he was convicted in state court of conspiracy to commit the same robbery. Much of the evidence used in the two trials was the same. In a habeas corpus proceeding, the district court ruled that the second prosecution violated double jeopardy principles and ordered Rossetti released without possibility of retrial. The Commonwealth now appeals. For the reasons that follow, we modify the district court's judgment.

## I.

The charges against Rossetti arose out of the armed robbery of a Brink's armored truck in the parking lot of a bank in the Jamaica Plain section of Boston on December 4, 1980. A Brink's guard had just removed a sack filled with $150,000 in cash from the truck and was carrying it toward the bank entrance when he was approached by three men, possibly masked. One of the men asked for the money; and another leveled a shotgun at the guard. Ultimately, the three jumped into a car and drove off, taking the money and the guard's pistol.

In both trials, the prosecution built its case around the testimony of Joseph Smith, who testified that he was a fourth participant in the December 4 robbery who had been waiting in a second car to assist if necessary by blocking pursuers. His testimony was crucial to the prosecution's case. Although there was ample evidence of the robbery, neither the Brink's guards nor anyone else could identify Rossetti as one of the perpetrators. Nor was there any eye-witness evidence, other than Smith's testimony, to prove Rossetti's participation in the conspiracy to commit the robbery.

Smith was not an ideal witness. He had been arrested four days after the Brink's robbery on a warrant charging escape from the Deer Island House of Correction; he then offered the government information about the Brink's job. In exchange, the Commonwealth promised Smith parole on his Deer Island sentence, immunity from prosecution for escape, and no jail time for his role in the Brink's robbery. He was also promised a plane ticket to anywhere in the United States, the restoration of his Massachusetts driver's license, and $1,500 in cash.

In the first trial (Rossetti I), which took place in June 1981, Rossetti was the sole defendant and was charged with armed robbery. Under Massachusetts law, the Commonwealth was prohibited from trying the conspiracy in the same trial as the substantive offense unless the defendant moved for joinder. Mass.R.Cr.P. 9(e). Smith described in detail the course of the robbery on the morning of December 4 and Rossetti's participation in it. He also described more briefly the preparations for the crime—including a visit to the bank on Thanksgiving Day, the final planning sessions, and the theft of cars on December 3—and Rossetti's role in those preparations.

The Commonwealth also presented physical evidence that the police had recovered from Rossetti's home, including hidden cash with serial numbers corresponding to the stolen money. The police had also found a key in Rossetti's room that led them to a locker located in another building. In the locker, police discovered clothing and weapons tied to the robbery, including the Brink's

guard's pistol and a sawed-off shotgun, which were also offered at trial.

Rossetti vigorously attacked Smith on cross-examination, and also offered police testimony that Smith had taken a much more active role in the robbery than he had admitted. Through testimony from his mother and his girlfriend, Rossetti also sought to establish an alibi for the time of the robbery (and for Thanksgiving Day). And to explain the physical evidence, witnesses testified that Rossetti had taken some items from Smith's apartment after Smith's arrest. The jury acquitted Rossetti of armed robbery.

In the second trial (*Rossetti II*), Rossetti, Louis Royce, and Joseph Sousa were co-defendants, each charged with conspiracy to commit the Brink's robbery. This trial took place in December 1982, and the pattern of the trial was similar to *Rossetti I*. After the two Brink's guards described the crime, the Commonwealth called Smith to testify. In the first trial, the focus of Smith's direct examination was the commission of the robbery; in *Rossetti II* Smith described the robbery and Rossetti's role in it but also dwelt at length on several meetings Smith had held with Rossetti and other conspirators prior to December 4.

Again, Smith was vigorously attacked, both on cross-examination and by impeaching testimony. Rossetti again offered alibi evidence for the date of the crime. Again, witnesses testified that Rossetti had taken incriminating items from Smith's apartment. All three defendants were convicted of conspiracy. The convictions were affirmed, *Commonwealth v. Royce*, 20 Mass.App.Ct. 221, 479 N.E.2d 198, *further rev. denied*, 395 Mass. 1104, 482 N.E.2d 328, 396 Mass. 1102, 484 N.E.2d 102 (1985), and Rossetti's request for post-conviction relief in state court was denied.

In September 1990, Rossetti filed in the district court for habeas corpus relief. The district court held that the second prosecution was barred by the double jeopardy clause as construed in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). *Rossetti v. Curran*, 891 F.Supp. 36 (D.Mass.1995). In the alternative, the district court held that, even if the second pros-

ecution had been proper, the state court had committed constitutional error by admitting evidence of Rossetti's participation in the robbery of which he had been previously acquitted. The court granted the writ of habeas corpus without the possibility of retrial.

## II.

The district court's legal rulings are reviewed *de novo, United States v. Aguilar-Aranceta*, 957 F.2d 18, 21 (1st Cir.), *cert. denied*, 506 U.S. 834, 113 S.Ct. 105, 121 L.Ed.2d 64 (1992), and we consider first the district court's ruling that the second prosecution was barred entirely under *Ashe v. Swenson*. The Commonwealth suggests that Rossetti's claim on this issue was not properly presented in state court and was thus lost, *see Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 511–12, 30 L.Ed.2d 438 (1971), but in our view the issue was adequately raised and preserved. *See Scarpa v. Dubois*, 38 F.3d 1, 6 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995).

The Fifth Amendment, held to apply to the states through the Fourteenth Amendment, provides in part that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). A layman might think that Rossetti had been twice prosecuted for the same criminal venture. But armed robbery and conspiracy to commit armed robbery are separately defined crimes under Massachusetts law and each requires an element that the other does not. Accordingly, under governing Supreme Court precedent, they are separate offenses for double jeopardy purposes. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Rossetti does not suggest otherwise.

But the Supreme Court has broadened double jeopardy protection by incorporating into the clause the concept of collateral estoppel, so that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same

**4**

parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. at 443, 90 S.Ct. at 1193. In this case, the district court invoked *Ashe v. Swenson* and reasoned that, in light of the evidence and instructions in the armed robbery trial, the jury in the first trial had necessarily determined that Rossetti had not *conspired* to commit the armed robbery.

Of course, conspiracy was not the crime charged in the first case, so the acquittal on armed robbery does not, standing alone tell us what, if anything, the jury found as to conspiracy. And under settled precedent, the burden was upon Rossetti to show that the jury had in the first case decided the conspiracy issue and decided it in Rossetti's favor. *Aguilar–Aranceta*, 957 F.2d at 23. In making this assessment, the district court quite properly examined the evidence and instructions. *Id.*

The district court reasoned that the jury at *Rossetti I* was presented with a stark choice: either accept Smith's testimony in its entirety, or conclude that he was a liar and reject it all. The jury had obviously rejected Smith's claim that Rossetti had participated in the robbery. In rejecting Smith's claim, the district court concluded, the jury also rejected his briefer account of Rossetti's participation in the conspiracy to commit the crime. In the district court's view, the first trial therefore resolved the issue of Rossetti's participation in the conspiracy in Rossetti's favor.

■ We do not share the district court's assurance that in acquitting Rossetti of armed robbery the jury in *Rossetti I* rejected the proposition that Rossetti had conspired with the perpetrators of the robbery. "The heart of a conspiracy is the formation of [an] unlawful agreement or combination." *Commonwealth v. Pero*, 402 Mass. 476, 524 N.E.2d 63, 65 (1988). If the jury accepted Rossetti's alibi for the day of the crime, it could easily have acquitted him of armed robbery without deciding whether Rossetti had agreed at some earlier time to play some role in the robbery.

Rossetti's mother and his girlfriend each testified that he was with them at the time of the robbery. And the girlfriend provided an exculpatory explanation as to how Rossetti came later to possess the money associated with the robbery; his possession of the key to the locker where the weapons were stored was never directly explained. Given Smith's weakness as a witness, the alibi could easily have supplied reasonable doubt, and the alibi did not preclude the possibility that Rossetti had conspired beforehand.

■ The district court's conclusion rested secondarily on the criminal joint venture instruction given to the jury in the first trial. The joint venture theory under Massachusetts law is designed to make "an active participant" in a crime, *Commonwealth v. Stewart*, 411 Mass. 345, 582 N.E.2d 514, 519 (1991), liable for the crime even if his role is limited to his presence coupled with an intent to aid in the crime if necessary. *Commonwealth v. Cunningham*, 405 Mass. 646, 543 N.E.2d 12, 15 (1989). But the charge given in this case, which we reprint in an appendix, was more muddled than the standard formulation.

■ Under the charge as given, the jury might have thought that it should convict Rossetti of armed robbery if he merely conspired in planning the robbery *or* it might instead have thought that it could not convict unless Rossetti was present at the robbery and ready to provide assistance. Unfortunately for Rossetti, the latter interpretation is at least as likely as the former; there is language in the charge pointing both ways. Thus, the jury's verdict of acquittal does not necessarily, or even probably, reflect a finding that Rossetti was innocent of conspiracy.

## III.

The district court held, in the alternative, that Rossetti was entitled to a new trial. The acquittal in the first trial, the district court reasoned, established at the very least that Rossetti had not been engaged in the armed robbery itself (or more precisely, found a reasonable doubt on this point). Yet, in the second trial the prosecutor again offered Smith's testimony that Rossetti had participated in the robbery itself, inviting the second jury to contradict the first.

For more than a decade after *Ashe v. Swenson,* this offer of evidence by the prosecutor—inviting the jury in the second trial to find that Rossetti had participated in the armed robbery—would clearly have offended the collateral estoppel branch of double jeopardy doctrine. *E.g., United States v. Gonzalez–Sanchez,* 825 F.2d 572 (1st Cir.1987). True, the purpose was to help the prosecutor prove a different offense not foreclosed by the first verdict, *i.e.,* that Rossetti had conspired to commit armed robbery. But the evidence of his participation in the robbery was still designed to prove the very conduct (armed robbery) of which the first jury had acquitted Rossetti.

Two decades after *Ashe v. Swenson,* the Supreme Court decided *Dowling v. United States,* 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). There, the federal government prosecuted Dowling for armed bank robbery; and because the bank robbers had been masked, the prosecutor—as identification evidence under Fed.R.Evid. 404—offered proof that Dowling, similarly masked and armed, had sought to rob a private home two weeks later and had been unmasked and identified in the struggle. The prosecutor's problem was that prior to the bank robbery trial, Dowling had been tried and acquitted of the house robbery.

In *Dowling,* as in this case, the defense argued that the use in the second trial of "acquitted conduct" evidence violated the collateral estoppel branch of double jeopardy. The Supreme Court rejected the claim, pointing to the difference in the burden of proof. In the first trial, the jury had found that the government had failed to prove the house robbery beyond a reasonable doubt; in the second, Dowling's presence in the house merely needed to be proved as a likelihood in order to help the government in the bank robbery case. *Id.* at 348–49, 110 S.Ct. at 671–72.

If the reasoning of *Dowling* is applied mechanically to our own case, the Commonwealth was arguably free—so far as federal constitutional law is concerned—to offer the bank robbery evidence in *Rossetti II.* No intermediate fact need be proved beyond a reasonable doubt, so long as the crime itself is proved beyond a reasonable doubt. *New Jersey v. T.L.O.,* 469 U.S. 325, 345, 105 S.Ct. 733, 744, 83 L.Ed.2d 720 (1985); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Fed.R.Evid. 401. It was enough for the jury in *Rossetti II* to conclude that it was likely that Rossetti had participated in the armed robbery.

If the jury found that Rossetti had likely participated in the bank robbery, this could then have been used by the jury, together with other evidence, to prove Rossetti's guilt on the conspiracy charge beyond a reasonable doubt. A jury could convict without the robbery evidence: Smith gave direct testimony in the second trial that Rossetti had conspired; and the prosecutor proved that proceeds and implements of the robbery had been linked with Rossetti. But if the jury *also* believed that Rossetti had likely participated in the robbery, guilt on the conspiracy charge could be found even more readily.

The district court took note of *Dowling* and sought to distinguish it, pointing out that in *Dowling's* bank robbery trial, the "other crime" evidence, offered under Rule 404(b) to establish identity, related to an entirely different criminal transaction, *i.e.,* the housebreaking. The district court continued:

> While the offenses in *Dowling* occurred at different times, with different victims and to a degree different participants, the offenses at issue here involved the same participants, the same offense, and followed a day later. Surely the admissibility of acquitted conduct in this case necessarily raises issues of fairness and dimensions of prejudice which the [Supreme] Court in *Dowling* was not obliged to consider.

891 F.Supp. at 47.

Perhaps so. From a classic double-jeopardy standpoint, it may seem especially "unfair" to retry the defendant after acquittal where the two crimes relate to the one set of events. But to distinguish *Dowling* on this ground is simply to quarrel with *Blockburger's* test of when two crimes comprise different offenses. It would be easy enough to quarrel; in fact, the Supreme Court for a brief period came closer to using a same-transaction test for double jeopardy, *see Gra-*

dy v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), overruled by United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). But Blockburger binds us all.

As for "prejudice," the inference of guilt drawn from the acquitted conduct may be more weighty in this case than in Dowling precisely because of the close relationship of the two crimes. Yet, that could easily be offered as an argument for admissibility here. Cf. Fed.R.Evid. 403 (balancing probative value against relevance). Plainly it would be highly probative in a conspiracy trial to show that the defendant accused of planning a crime with others had probably carried out the very crime alleged to have been planned.

■ Further, in one important respect, there is less risk of unfair prejudice in this case than in Dowling. The ordinary threat of unfair prejudice in a Rule 404(b) case is that the jury will infer that because the defendant has committed other bad acts, he has a "bad character" and is likely to have acted in conformity therewith. This inference, forbidden by Rule 404(a), is largely submerged by the more obvious and permissible inference that because the defendant participated in the crime that was the object of the conspiracy, he was guilty of the conspiracy as well.[1]

■ And yet the Commonwealth has made none of these arguments, assuming instead that while it was free to try Rossetti for conspiracy, the prosecutor's use of evidence of Rossetti's participation in the armed robbery was forbidden by Ashe v. Swenson. Why the Commonwealth made this concession is unclear: its brief cites only to a Massachusetts case which relied on Ashe v. Swenson but was decided prior to Dowling. Possibly, the Commonwealth was persuaded by the district court's distinction of Dowling; alternatively, it may have placed undue faith in its argument—rejected by the district

court but renewed by the Commonwealth here—that the armed robbery evidence was harmless error. In all events, we hold the Commonwealth to its waiver.

Although very doubtful about the district court's attempted distinction of Dowling, we are inclined to reserve the issue for a case in which the prosecution chooses to litigate the point. Just how the Supreme Court would apply Dowling in a slightly different context is a matter that could at least be debated. Given our rejection of the district court's main ruling, the Commonwealth is free to retry Rossetti if it desires, so there certainly is no threat to public safety. In fact, we were told that Rossetti was on parole when his habeas petition was granted.

■ Finally, something, but not much, needs to be said about the Commonwealth's harmless error defense. Assuming dubitante that the armed robbery evidence was precluded in the second trial, that "error" was not harmless under the standard test. Brecht v. Abrahamson, 507 U.S. 619, 638, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (error is harmless if it has no "substantial and injurious effect or influence in determining the jury's verdict"). O'Neal v. McAninch, — U.S. —, —, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995). This is so even though we agree with the government that the other evidence of conspiracy (Smith's testimony as to conspiracy and the real evidence) is impressive, if taken most favorably to the government.

■ But in appraising harmless error, we do not look only at the government's best case but rather at the evidence as a whole. United States v. Innamorati, 996 F.2d 456, 475–76 (1st Cir.), cert. denied, — U.S. —, 114 S.Ct. 409, 126 L.Ed.2d 356 & — U.S. —, 114 S.Ct. 459, 126 L.Ed.2d 391 (1993). Smith was a witness that the jury could easily choose to disbelieve. And Rossetti's possession of some of the real evidence was explained, although a jury might think the

---

1. The district court thus erred in saying that the armed robbery evidence in this case "violated the express terms of Rule 404(b)," even if we ignore the fact that Rule 404(b) did not govern the Massachusetts courts. Subject to Rule 403, evidence of a second crime transactionally related

to charged crime is admissible when, as here, it is "so blended or connected with the one on trial as that proof of one incidentally involves the other." United States v. Dworken, 855 F.2d 12, 27 (1st Cir.1988) (emphasis and citations removed).

explanation far-fetched and it was certainly incomplete. Smith's detailed evidence of Rossetti's actual participation in the robbery itself could easily have altered the outcome.

The judgment of the district court is *modified* to provide for issuance of the writ unless, within a reasonable time to be determined by the district court, the Commonwealth chooses to retry Rossetti on the charge of conspiracy, and the matter is *remanded* to the district court for the entry of a modified judgment.

*It is so ordered.*

### APPENDIX

The charge, in relevant part, read as follows:

> Under our law and as a general rule, if two or more persons engage in a joint criminal undertaking in furtherance of its object each is the agent of the other in all matters relating to the common object of the enterprise and the acts of one are the acts of all. To be engaged in a joint enterprise, however, a person must actively participate in it. Merely being present at the time when a crime is committed is not sufficient even though a defendant may have had knowledge that the crime was going to be committed and did absolutely nothing to prevent it. What must be proved is that the defendant who is charged on the theory of joint enterprise in some way associated himself with the venture; that is, he participated in it as something he wished to bring about as an active participant as distinguished from merely being present or at the scene when some other person committed a criminal act.
>
> On the other hand, a person may be a participant in the commission of a crime without having actually performed any physical act at the time when the crime was committed. If the defendant who is charged under the theory of joint enterprise has put himself in a position or location where he can render assistance or encouragement in the commission of the crime, then, and once again, as a general rule he can be found guilty even though he did not commit the criminal act or made no physical contribution to the execution of the criminal act.
>
> In order, therefore, to find this defendant guilty of the crime of robbery, you must be satisfied, first of all, beyond a reasonable doubt that he participated with others in this armed robbery and not that he was merely present at the time but that in some active way he associated himself with the crime before it was committed and put himself in a position or location where he might aid or assist those persons in the commission of the crime. You must be satisfied that this defendant combined and confederated in advance with the others to accomplish an illegal purpose.