Roy v. Estabrook                    CV-95-536-JD  08/20/97

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Steven J. Roy

    v.                               Civil No. 95-536-JD

Robert Estabrook, et al.


O R D E R


The plaintiff, Steven J. Roy, brought this action alleging
that the defendants violated his rights under state and federal
law during their investigation and subsequent prosecution of him.
Before the court are the motions for summary judgment of the
county and state defendants (document nos. 44 & 45).[1]


Background[2]

In November 1992, two women provided defendant Trooper
Robert Estabrook of the New Hampshire State Police with
information concerning criminal activity in which the plaintiff
allegedly had engaged.  The first was Dorothy Harris, who
previously had been romantically involved with the plaintiff.

---

[1]The court uses the term "state defendants" to refer to
defendants Robert Estabrook and the New Hampshire State Police,
and the term "county defendants" to refer to defendants Robert
Ducharme and Rockingham County.

[2]The facts relevant to the instant motions either are not in
dispute or have been alleged by the plaintiff.

Harris informed Estabrook that the plaintiff had shown her two fake driver's licenses that he had manufactured. The second woman, Donna Taylor Blackburn, had worked as a nanny for the plaintiff's children but was fired for having lied about her qualifications for the job. Blackburn informed Estabrook that "she may have seen shotguns or pellet guns (she wasn't sure) in the plaintiff's pantry." Complaint ¶ 23.

According to the plaintiff, both Harris and Blackburn underwent "pre-interview" discussions with Estabrook prior to their disclosure of information, during which Estabrook encouraged them to provide exaggerated or fabricated information about the plaintiff in order to allow Estabrook to acquire a warrant to search the plaintiff's home.[3] The plaintiff further alleges that, following their initial disclosure of information to Estabrook, Harris and Blackburn underwent a second round of "pre-interviews," which the plaintiff contends are part of the New Hampshire State Police's standard procedure, during which they again were encouraged to embellish their stories. After her initial disclosure of evidence to Estabrook, Blackburn subsequently reported to Estabrook that she had witnessed an

---

[3]Estabrook has attested that he did not, and never has, "pre-interviewed" witnesses in the manner alleged in the plaintiff's complaint.

incident during which she saw the plaintiff cutting tissue from his daughter's vagina, and also told Estabrook that she had been handcuffed, sexually assaulted in the plaintiff's presence, and held at gunpoint by the plaintiff's tenant, C.J. Kelley.

After receiving this information from Harris and Blackburn, Estabrook spoke with an FBI agent, who informed Estabrook that a confidential informant, Maria Zarate, had told her that the plaintiff and Kelley had both been involved in the homicide of Joanna Kozack, a former FBI employee who was believed to have been romantically involved with the plaintiff. In addition, Estabrook learned from the FBI that Zarate had previously reported Kozack's death to the police and had directed the police to the body, and learned that Blackburn had seen a wallet belonging to Kozack in a box in the plaintiff's attic. Estabrook also ascertained that both the plaintiff and Kelley previously had been convicted of felonies.

Based on the events described above, Estabrook prepared an affidavit[4] in support of a warrant to search the plaintiff's

---

[4]The plaintiff asserts that defendant Robert Ducharme, the assistant Rockingham County attorney who later attempted to prosecute the plaintiff for, inter alia, felonious sexual assault, assisted Estabrook in preparing this affidavit. However, Ducharme has attested that he was not informed of the charges against the plaintiff until after Estabrook prepared and submitted his affidavit and after the warrant had been executed, and the plaintiff has adduced no evidence to refute this assertion.

home.[5]  Estabrook attested in the affidavit that based on the information contained therein, he believed that the plaintiff and C.J. Kelley were convicted felons in the possession of firearms; that the plaintiff and Kelley were in the business of producing fraudulent identifications; that the plaintiff committed aggravated felonious sexual assault against his daughter; and that the plaintiff was in possession of certain property belonging to Joanna Kozack.  Accordingly, Estabrook requested a warrant authorizing the search of the plaintiff's residence for, inter alia, firearms and ammunition; materials used in the production of identification materials, including computer hardware and software; scalpels; cameras; property belonging to Joanna Kozack; and all blood-stained clothing or materials.

---

[5]The plaintiff has contended both in his criminal case and in the case before the court that Estabrook's affidavit in support of a search warrant was not only the product of the false testimony of Blackburn and Harris, but also of Estabrook's omission and misrepresentation of certain material information in his affidavit.  For example, the plaintiff has noted that while the Estabrook affidavit reports that "[Blackburn] advised Roy is in possession of firearms (shotgun, pistol)," Blackburn actually told Estabrook that Roy had two firearms, "one possibly a shotgun, the other a pellet pistol."  See Motion to Suppress at 11, State v. Roy (N.H. Super. Ct. 1993) (No. 93-S-794).  Finally, the plaintiff has contended that Estabrook lied when he stated in his affidavit that the information supplied by Harris, Blackburn, and Zarate "ha[d] been verified and is considered accurate and reliable," Estabrook Aff. in Sup. of Req. for Search Warrant at 4.

4

On November 23, 1993, Judge R. Lawrence Cullen of the Exeter District Court issued a warrant to search the plaintiff's residence, and the New Hampshire State Police conducted such a search two days later, seizing, <u>inter alia</u>, computer equipment belonging to the plaintiff, the firearm with which Kelley was alleged to have threatened Blackburn, and, according to the state defendants, Joanna Kozack's wallet. According to the plaintiff, the police who executed the warrant also interviewed and "pre-interviewed" several employees of the plaintiff, who operated a computer business out of his home.

On November 26, 1992, the plaintiff was arraigned in Exeter District Court, with defendant Assistant Rockingham County Attorney Robert Ducharme representing the state. The plaintiff was charged with several crimes, including aggravated felonious sexual assault. A bail hearing subsequently was conducted in Rockingham County Superior Court, during which Ducharme represented to the court that an indictment for murder was imminent. The plaintiff's request for bail was denied.

Trial on the aggravated felonious sexual assault charges was scheduled to commence on March 8, 1993. On the morning of the first day of trial, Ducharme informed the court that Blackburn, who claimed to have witnessed the plaintiff sexually assault his daughter, would be unable to testify at trial, and, accordingly,

5

moved for a continuance.  The motion was denied and, prior to the impanelment and swearing in of a jury, Ducharme entered a <u>nolle prosequi</u> on the charges against the plaintiff.  Although the plaintiff subsequently was released from custody, he was reindicted by the grand jury on substantially the same charges shortly thereafter.

On approximately March 16, 1993, C.J. Kelley made a statement to law enforcement authorities, including Estabrook, implicating the plaintiff in the death of Joanna Kozack, as a result of which the plaintiff was indicted on murder charges.[6] From this point on, all other charges against the plaintiff, including the felonious aggravated sexual assault charge, were placed on hold.  The plaintiff was eventually convicted of first degree murder, although no evidence seized during the November 1992 search of the plaintiff's home was introduced during the trial.  The New Hampshire Supreme Court affirmed the conviction. <u>See</u> <u>State v. Roy</u>, 140 N.H. 478, 668 A.2d 41 (1995).  Following his conviction for murder, the remaining charges against the plaintiff were nol prossed.

On November 8, 1995, the plaintiff filed the complaint in

---

[6]Ducharme has attested that he played no role in investigating the murder charge and that the entire criminal case against the plaintiff was transferred to the New Hampshire Attorney General's office on March 18, 1993.

6

the instant action, asserting a variety of state and federal law claims in the portion of his complaint styled "claims for relief." In light of the dismissal of several parties originally named in the complaint and the plaintiff's voluntary withdrawal of several of his allegations, the court understands the plaintiff's complaint to make the following assertions as independent grounds for relief: (1) defendants Estabrook and Ducharme conspired to make and made false allegations in the affidavit submitted in support of a request for a search warrant, in violation of the plaintiff's Fourth and Fourteenth Amendment rights; (2) defendant Estabrook violated the plaintiff's due process rights by "pre-interviewing," as described above, Harris, Blackburn, and the plaintiff's employees; (3) defendant Ducharme denied the plaintiff his right to due process and to be free of cruel and unusual punishment by making false statements during a bail hearing; (4) defendant Ducharme violated the plaintiff's right to due process of law and to be free of multiple prosecutions by nol prossing the first set of charges against the plaintiff and subsequently seeking a second indictment; (5) defendant New Hampshire State Police deprived the plaintiff of his right to due process of law by maintaining a policy of permitting officers to "pre-interview" witnesses; (6) defendant Rockingham County deprived the plaintiff of his right to due

7

process and to be free of multiple prosecutions by maintaining a policy of permitting prosecutors to nol pros charges against and to seek reindictment of criminal defendants; and (7) defendants Estabrook and Ducharme committed various state law torts against the plaintiff, including defamation, malicious prosecution, invasion of privacy, intentional infliction of emotional distress, false imprisonment, witness tampering (Estabrook only), intentional interference with custody (Ducharme only), and abuse of process (Ducharme only).

Discussion

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the

8

lack of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992).  The court must view the entire record in the light most favorable to the plaintiff, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).  However, once a defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

A.   State Defendants' Motion for Summary Judgment

    1.  Liability of State Under 42 U.S.C. § 1983

    It is well settled that § 1983 does not provide a cause of action to plaintiffs seeking monetary relief against the state, arms of the state, or state officials acting in their official capacities.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 & n.10 (1989).  Accordingly, the court grants summary judgment against the plaintiff with respect to his claims against the New Hampshire State Police and defendant Estabrook in his

9

official capacity.[7]


## 2. Claims Based on "Pre-Interviews" of Witnesses

As noted supra, Estabrook has attested that he did not, and has never, "pre-interviewed" witnesses in the manner alleged in the plaintiff's complaint. As the plaintiff has failed to adduce any evidence to rebut this assertion, he has failed to generate a genuine issue of material fact as to this claim. Accordingly, summary judgment is warranted on the federal law claims based on Estabrook's pre-interviewing of witnesses.


## 3. False Allegations in Support of Search Warrant

A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 155-56 (1978). . . . .

Under Franks and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a

---

[7]Although, in addition to his request for monetary relief, the plaintiff has requested a declaration that the allegations set forth in his complaint are true and constitute a violation of his constitutional rights, the facts alleged in his complaint do not present any cognizable basis for the issuance of declaratory relief against any of the defendants.

10

warrant; and (2) that such statements are material, or necessary to the finding of probable cause.

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997).

Stripped of its conclusory assertions, the plaintiff's complaint makes reference to four misrepresentations and omissions in the Estabrook affidavit. Of these, the record indicates that only three even potentially rise to the level of false or misleading information.[8] Further, in light of the level of detail and corroboration provided in the Estabrook affidavit, which included an eyewitness account of a sexual assault and a victim's account of being held at gunpoint in the plaintiff's home, as well as a witness's description of the plaintiff's offer to furnish her with false identification, no reasonable juror could conclude that any of the remaining three alleged misrepresentations, whether considered individually or collectively, rise to a level of materiality sufficient to defeat probable cause.

Indeed, the first set of omissions attributed to Estabrook, i.e., his failure to mention in his affidavit the plaintiff's previous romantic involvement with Harris and his firing of Blackburn from her position, constitutes mere speculation about these witnesses' motives to implicate the plaintiff, and bears

---

[8]The plaintiff has adduced no competent evidence to refute Estabrook's assertion that the information contained in the affidavit had been verified and was considered reliable.

11

little on the determination of the existence of probable cause to search the plaintiff's house.  Similarly, the fact that the plaintiff claims that he "only" had two felony convictions, as opposed to the "numerous" convictions referred to in Estabrook's affidavit, is of little consequence, particularly given that both convictions to which the plaintiff has admitted involved children, including one for statutory rape, and either conviction could have served as the basis of a felon-in-possession charge. Finally, the court does not consider Estabrook's statement that, according to Blackburn, the plaintiff was in the possession of both a shotgun and a pistol, to be fatal to the validity of the warrant, particularly in light of Blackburn's statement that the plaintiff had two firearms, one of which was "possibly a shotgun," and her description of being held at gunpoint by Kelley in the plaintiff's house.

In short, even assuming arguendo that Estabrook intentionally or recklessly made any of the misrepresentations that the plaintiff alleges in his complaint, no reasonable juror could conclude that any of these misrepresentations would defeat probable cause to believe that evidence of certain crimes would be found in the plaintiff's house.  There being no genuine issues of material fact concerning the materiality of the statements in question to a finding of probable cause, the plaintiff's § 1983

12

claim based on the truthfulness of the Estabrook affidavit must fail.


B. <u>County Defendants' Motion for Summary Judgment</u>

    1. <u>Ducharme's Role in Preparing the Search Warrant</u>

In support of their motion for summary judgment, the county defendants point to defendant Ducharme's sworn assertion that he did not become involved in the investigation of the plaintiff until November 27, 1992 -- after Estabrook's preparation of an affidavit, the execution of a warrant to search the plaintiff's home, and the plaintiff's arrest. Because the plaintiff has failed to adduce any evidence to refute this assertion, the court grants summary judgment in favor of Ducharme on all of the plaintiff's claims seeking to hold Ducharme liable for his role in preparing an affidavit for a warrant or executing a warrant to search the plaintiff's home.


    2. <u>Prosecutorial Immunity</u>

The county defendants next argue that Ducharme is entitled to summary judgment on the plaintiff's claims seeking to hold him liable for the actions undertaken after November 25, 1995, on the ground that he is entitled to absolute prosecutorial immunity for these actions. The court agrees.

13

Public officials performing prosecutorial functions are entitled to absolute immunity under both state and federal law for conduct performed in the official's "'role as advocate for the state.'" Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 29 (1st Cir. 1995) (quoting Burns v. Reed, 500 U.S. 478, 491 (1991)); accord Belcher v. Paine, 136 N.H. 137, 145, 612 A.2d 1318, 1324 (1992). Absolute immunity does not reach acts that are merely investigatory or administrative in nature; rather, such immunity attaches only to conduct that is "intimately associated with the judicial phase of the criminal process." Guzman-Rivera, 55 F.3d at 29 (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)); accord Belcher, 136 N.H. at 147, 612 A.2d at 1325 (absolute immunity attaches only to conduct that is "functionally related to the initiation of criminal process or to the prosecution of criminal charges.").

In the instant case, the vast majority of the post-November 27, 1992, conduct attributed to Ducharme in the complaint falls within this protected category. Specifically, the plaintiff contends that Ducharme made misrepresentations in open court at the plaintiff's arraignment, during his bail hearing, and in order to obtain indictments against the plaintiff; opposed certain motions in preparation for his criminal trial; and sought reindictment of the plaintiff for felonious sexual assault after

14

nol prossing the same charges against him.  Because this conduct clearly falls within Ducharme's role as advocate for the state, the plaintiff's state and federal law claims against Ducharme based on his post-November 25, 1992, conduct must fail.[9]

_____3.  Liability of Rockingham County

In support of their motion for summary judgment, the county defendants note that even if the conduct of its policymakers amounts to deliberate indifference to a plaintiff's rights, a municipality can found liable under 42 U.S.C. § 1983 for a constitutional violation only if its policies or customs cause the deprivation of that plaintiff's federally protected rights. See Monell v. Department of Social Servs., 436 U.S. 658, 694-95 (1978); see also Rubin v. Smith, 919 F. Supp. 534, 542 (D.N.H. 1996) (municipal liability cannot attach absent deprivation of constitutionally protected right).

Here, the plaintiff alleges that Rockingham County maintained a policy of permitting prosecutors to reindict

_____

[9]To the extent the plaintiff has attributed to Ducharme post-November 25, 1992, conduct that falls outside the scope of Ducharme's absolute prosecutorial immunity, i.e., his issuance of a press release about the search of the plaintiff's home, the plaintiff has failed to adduce evidence of this incident sufficient to rebut Ducharme's sworn testimony denying that he issued such a release.

15

defendants after the charges against them had been nol prossed prior to trial.  However, even assuming arguendo that the county maintained such a policy, it is well settled that jeopardy does not attach in a jury trial until the impanelment and swearing in of a jury, see, e.g., United States v. Brand, 80 F.3d 560, 568 (1st Cir. 1996), cert. denied, 117 S. Ct. 1797 (1997), and the plaintiff has offered no legal authority to support his claim that the dropping and reinstitution of charges violated his right to due process.  Due to the plaintiff's failure to demonstrate the violation of a constitutional right, the plaintiff's municipal liability claims fail.[10]

## Conclusion

The county defendants' motion for summary judgment (document no. 44) is granted.  The state defendants' motion for summary judgment (document no 45) is granted as to the plaintiff's claims arising under federal law.  The court declines to exercise

---

[10]The court also notes that the decision of a New Hampshire county attorney either to bring or to terminate charges against a defendant does not represent the official policy of the county, and thus cannot subject the county to liability under § 1983. See D'Amour v. Burke, No. 95-194-JD, slip op. at 4-6 (D.N.H. Apr. 18, 1997).  It follows that the plaintiff's allegation that the county "implement[ed] a policy of routinely using the nolle prosequi and subsequent reindictment," Compl. ¶ 88, does not give rise to a policy that could trigger § 1983 liability.

16

jurisdiction over the plaintiff's claims against the state defendants arising under state law.  See 28 U.S.C. § 1367(c)(3) (West 1993).  The clerk is ordered to close the case.

    SO ORDERED.


                                      _____
                                      Joseph A. DiClerico, Jr.
                                      Chief Judge

August 20, 1997

cc:   Steven J. Roy, pro se
      Stephen J. Judge, Esquire
      Robert B. Gainor, Esquire
      Michael R. Mortimer, Esquire