# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 31 2018, 9:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Daniel Lopez-Castillo, *Appellant-Defendant,* <br><br> *v.* <br><br> State of Indiana, *Appellee-Plaintiff.* | May 31, 2018 <br><br> Court of Appeals Case No. 02A03-1711-CR-2783 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause No. 02D05-1610-F4-72 |

**Bradford, Judge.**

# Case Summary

At some point in 2015 or 2016, Daniel Lopez-Castillo molested his girlfriend Amy Pate's two minor daughters by fondling their vaginas with his hand. When the girls were removed from the home due to Pate's drug use, they told their foster mother of Lopez-Castillo's molestations. The State charged Lopez-Castillo with two counts of Level 4 felony child molesting, a jury found Lopez-Castillo guilty as charged, and the trial court sentenced him to an aggregate term of sixteen years of incarceration. Lopez-Castillo contends that the trial court abused its discretion in admitting certain evidence, the State failed to produce sufficient evidence to sustain his convictions, and his sentence is inappropriately harsh. Because we disagree with all of Lopez-Castillo's contentions, we affirm.

# Facts and Procedural History

In 2015, A.M. (born November 5, 2006), A.P. (born November 28, 2005), and their mother Amy Pate lived in Lopez-Castillo's house in Fort Wayne, in which the girls shared a bedroom. During this time, Lopez-Castillo would consume alcohol, sneak into the girls' bedroom, and touch their vaginas with his hand. A.P. remembered her vagina smelling like beer after Lopez-Castillo molested her, while A.M. remembered Lopez-Castillo's sweat dripping down on her and her vagina burning afterwards. Lopez-Castillo also touched A.P.'s vagina once while she was sitting on a couch.

[3] Both sisters would put items against the door to stop Lopez-Castillo from entering their room and place stuffed animals between their legs to deter him. A friend of the girls would occasionally sleep over and help the girls stack a crib, a suitcase, and a large television behind the door to keep Lopez-Castillo out. According to A.M. and A.P., Lopez-Castillo molested them three and four times, respectively.

[4] A.M. and A.P. disclosed the molestation to Pate, who said that she did not believe them and told them that she needed to keep Lopez-Castillo around to pay the bills. The girls' brother learned of the abuse from his grandmother, and Pate asked him to sleep in the girls' room at night. The brother observed Lopez-Castillo coming out of the girls' bedroom at night and, on May 24, 2016, called the Indiana Department of Child Services ("DCS"). DCS removed A.M. and A.P. from the home after Pate failed two drugs screens. The girls were placed into foster care with Juanita McAbee, and, on the second day they were with McAbee, told her about the abuse by Lopez-Castillo and their efforts to block the door.

[5] On October 21, 2016, the State charged Lopez-Castillo with two counts of Level 4 felony child molesting, one count related to each girl. Prior to trial, the State filed notices of intent to use Evidence Rule 404(b) evidence and statements of protected persons. The State argued that the Rule 404(b) motion, which related to Pate's drug use, was relevant and admissible as it reflected on her ability to recall and her motive to keep Lopez-Castillo in the home. The trial court ultimately granted the State's motion regarding the 404(b) evidence.

The trial court also granted the State's request to use statements by protected persons, specifically the girls' statements to McAbee.

[6] On September 19, 2017, a jury found Lopez-Castillo guilty as charged. On October 20, 2017, the trial court sentenced Lopez-Castillo to an aggregate sentence of sixteen years. In sentencing Lopez-Castillo, the trial court found mitigating circumstances in Lopez-Castillo's lack of criminal history and employment, which it nonetheless found to be outweighed by his violation of a position of trust, his multiple victims, and the nature and circumstances of the offenses.

# Discussion and Decision

### Standard of Review for Issues I and II

[7] The admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans denied*. We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id*. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*. We may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence, and consider the evidence most favorable to the trial

court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*.

## I. Statements Made by A.M. and A.P. to McAbee

[8] Lopez-Castillo contends that the trial court abused its discretion in admitting McAbee's testimony regarding A.M.'s and A.P.'s statements to her about Lopez-Castillo's molestations. Indiana law allows the admission of out-of-court statements made by protected persons provided that the trial court finds that "the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability" and the protected persons either testify at trial or are found unavailable as witnesses. Ind. Code § 35-37-4-6(e). A.M. and A.P. are protected persons because they are both less than fourteen years old. *See* Ind. Code § 35-37-4-6(c)(1).

[9] Even if we assume that the admission of McAbee's evidence was improper, however, that admission can only have been harmless. McAbee did not testify about anything that A.M. and A.P told her that they did not testify to themselves directly, and it is well-settled that the admission or exclusion of "[e]vidence that is merely cumulative is not grounds for reversal." *Tobar v. State*, 740 N.E.2d 106, 108 (Ind. 2000). McAbee testified that A.M. and A.P. told her that Lopez-Castillo molested them and that they took steps to prevent further molestation, which was merely cumulative of A.M.'s and A.P.'s testimony. Any error the trial court may have committed in this regard was harmless.

# II. 404(B) Evidence

Indiana Rule of Evidence 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Lopez-Castillo contends that the admission of evidence regarding Pate's drug use constituted an abuse of discretion. "The traditional office of Rule 404(b) has been to protect a defendant from being convicted based on unrelated prior bad acts." *Garland v. State*, 788 N.E.2d 425, 428 (Ind. 2003).

> The principal risks of unfair prejudice presented by uncharged misconduct evidence are that the jury will infer that the defendant is a bad person who should be punished for other, uncharged misdeeds, *Williams v. State*, 677 N.E.2d 1077, 1081 (Ind. Ct. App. 1997), and that the jury will draw the forbidden inference that the defendant's character is such that she has a propensity to engage in conduct of the sort charged, and that she acted in conformity with that character on the occasion at issue in the charge.

*Id*. (citing *Rossetti v. Curran*, 80 F.3d 1, 6 (1st Cir.1996)). While it is Pate's alleged other bad acts—not Lopez-Castillo's—which are at issue, the Indiana Supreme Court has held that Rule 404(b) applies to the acts of non-defendants as well. *See id*. To decide whether character evidence is admissible pursuant to

Rule 404(b), a trial court must determine "whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the person's propensity to engage in a wrongful act," and then balance "the probative value of the evidence against its prejudicial effect." *Bassett v. State*, 795 N.E.2d 1050, 1053 (Ind. 2003) (citing *Hauk v. State*, 729 N.E.2d 994, 1001 (Ind. 2000); *Monegan v. State*, 721 N.E.2d 243, 248 (Ind. 1999)).

[12] Lopez-Castillo argues that evidence of Pate's drug use was extraneous to the charges against him. While it is true that evidence of Pate's drug use does not directly show that Lopez-Castillo molested A.M. and A.P., it is relevant to the extent that it rebuts any suggestion that the delay in reporting shows that the accusations were false. It is reasonable to infer that Pate's drug use led to a financial dependency on Lopez-Castillo, which, in turn, led her to discount the girls' accusations, or at least claim to. The girls could have concluded that it was futile to report Lopez-Castillo's molestations to others if their own mother said that she did not believe them, or at least that it was futile while they were still living with her. We conclude that, under the circumstances of this case, the trial court did not abuse its discretion in concluding that evidence of Pate's drug use was relevant.

[13] Moreover, even if we were to assume that evidence of Pate's drug use was not probative, Lopez-Castillo does not claim that the evidence prejudiced him in any way, much less that danger of prejudice substantially outweighed its probative value. "Evaluation of whether the probative value of an evidentiary matter is substantially outweighed by the danger of unfair prejudice is a

discretionary task best performed by the trial court." *Bell v. State*, 29 N.E.3d 137, 142 (Ind. Ct. App. 2015) (citing *Bryant v. State*, 984 N.E.2d 240, 249 (Ind. Ct. App. 2013), *trans. denied*), *trans. denied*. "When determining any unfair prejudicial impact, courts should look for the dangers that the jury will substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury." *Bell*, 29 N.E.3d at 142 (citing *Duvall v. State*, 978 N.E.2d 417, 428 (Ind. Ct. App. 2012)). Simply put, even if Lopez-Castillo *had* claimed that evidence of Pate's drug use unfairly prejudiced him, we have difficulty seeing how this could have been the case. Lopez-Castillo has failed to establish that the trial court abused its discretion in admitting this evidence.

## III. Whether the State Produced Sufficient Evidence to Sustain Lopez-Castillo's Convictions

[14]     Lopez-Castillo contends that the State produced insufficient evidence to sustain his convictions for two counts of Level 4 felony child molesting. When reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility. *Jordan v. State*, 656 N.E.2d 816, 817. (Ind. 1995). We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Id*. If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Spangler v. State*, 607 N.E.2d 720, 724. (Ind. 1993).

[15] Lopez-Castillo contends only that A.T.'s and A.M.'s testimony that he molested them was incredibly dubious, mandating reversal of his convictions. "Appellate courts may [...] apply the 'incredible dubiosity' rule to impinge upon a jury's function to judge the credibility of a witness." *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007) (citing *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002)).

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Love*, 761 N.E.2d at 810 (citations omitted).

[16] While Lopez-Castillo is correct that each of his convictions relies, in the end, almost solely on statements or testimony from the alleged victims, the incredible dubiosity rule will nonetheless not help him. First, there is at least some evidence to corroborate the girls' story, as the girls' brother saw Lopez-Castillo coming out of their room at night at least one time. Moreover, the girls' testimony is neither inherently improbable nor equivocal and there is no hint of coercion. At trial, A.M. testified that Lopez-Castillo had molested her three times, and A.P. testified that Lopez-Castillo had molested her four times. A.M. and A.P. both testified that Lopez-Castillo would consume alcohol, enter their room at night, put his hand underneath their pajamas, and rub their

vaginas. Both girls also testified that they would stack items up behind their door in an attempt to keep Lopez-Castillo out and would both place stuffed animals between their legs to keep him from molesting them. A.P. testified that her vagina would "sting a little" and smell like beer after Lopez-Castillo fondled her, while A.M. testified that her vagina would burn after he fondled her and that she could remember Defendant's sweat dripping down onto her. Tr. Vol. II p. 143. There is nothing inherently improbable about any of this. Although Lopez-Castillo points to some minor inconsistencies or issues with the testimony, such things are for the jury to evaluate as it sees fit. The evidence used to support Lopez-Castillo's convictions falls far short of being so inherently improbable that no reasonable person could credit it.

## IV. Whether Lopez-Castillo's Sentence is Appropriate

[17] Lopez-Castillo contends that his sixteen-year, aggregate sentence for his two Level 4 felony child molesting convictions is inappropriately harsh. We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). "[W]hether we regard a sentence as appropriate at the end of

the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Indiana Code section 35-50-2-5.5 provides, in part, that "[a] person who commits a Level 4 felony shall be imprisoned for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." The trial court imposed eight-year sentences for each of Lopez-Castillo's convictions.

[18] The nature of Lopez-Castillo's offenses was that he exploited his position as a parental figure to violate the trust of A.M. and A.P., who were both under the age of twelve, by molesting them. The record contains indications of multiple violations over an extended period of time. The measures taken by A.M. and A.P. to prevent Lopez-Castillo from molesting them made it clear that his actions were not welcome, to say the least; yet, these measures apparently did nothing to deter Lopez-Castillo. Moreover, Lopez-Castillo's crimes could not have come at a worse time for the girls, who were also dealing with the consequences of Pate's drug problem, which was the reason DCS originally removed them from the home. Lopez-Castillo's molestations have had a strong and negative impact on the girls. The nature of Lopez-Castillo's offenses justifies his slightly-enhanced sentences.

[19] Lopez-Castillo's sentence is also not inappropriate in light of his character. In addition to what the nature of the offenses says about Lopez-Castillo's character, he has shown no remorse for his crimes. At sentencing, Lopez-Castillo stated—in front of A.M. and A.P.—that "I also ask God to illuminate the minds of these two children, because—so they can do that—they don't do this again. Because he who lies against his father or his mother or against any other person [commits] a serious sin." Tr. Vol. III pp. 161–62. Lopez-Castillo's attempt to shift blame to his victims does not speak well of his character. We acknowledge, as did the trial court, Lopez-Castillo's lack of a prior criminal record and gainful employment. Given the nature of Lopez-Castillo's offenses and his lack of remorse, however, this is not enough to convince us that his slightly-enhanced sentences are inappropriately harsh.

[20] We affirm the judgment of the trial court.

Baker, J, and Kirsch, J., concur.