UNITED STATES of America, Appellee,

v.

Esperanza AGUILAR–ARANCETA, Defendant, Appellant.

No. 91–1513.

United States Court of Appeals, First Circuit.

Heard Nov. 6, 1991.

Decided Feb. 19, 1992.

**20**

Rachel Brill, with whom Benicio Sánchez–Rivera, Federal Public Defender, Old San Juan, P.R., was on brief for defendant, appellant.

Esther Castro–Schmidt, Asst. U.S. Atty., with whom Daniel F. López–Romo, U.S. Atty., and José A. Quiles, Chief, Criminal Div., Hato Rey, P.R., were on brief for appellee.

Before CAMPBELL, Circuit Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

Esperanza Aguilar–Aranceta appeals from the district court's denial of her motion to dismiss the indictment based on collateral estoppel and double jeopardy con-

siderations. Because we believe the defendant is estopped from presenting a double jeopardy claim, and has failed to present a viable collateral estoppel argument, we affirm the decision of the district court.

## FACTS

On September 22, 1990, Esperanza Aguilar–Aranceta, defendant-appellant, went to pick up two parcels at the United States Post Office in Old San Juan, Puerto Rico. Two yellow slips had been left in her mail box prior to that date notifying her that there were two registered parcels addressed to her at the post office.[1] When the window clerk at the post office counter brought her two packages with return addresses from Medellin, Colombia, defendant stated "no me (sic) family," to which the attendant replied that it was up to her if she wanted to take them or not.[2] The window clerk left the packages on the counter and once again the defendant said "no me (sic) family," and once again the clerk replied that it was up to her if she wanted to take them or not.[3] Defendant then proceeded to take the two packages. Immediately upon exiting the building defendant was detained and placed under arrest. The two packages she was carrying had been intercepted by a mail specialist earlier and found to contain approximately 224 grams of cocaine.

Defendant initially appeared before a Magistrate on September 24, 1990. Two days later defendant was afforded a detention hearing after which she was ordered detained without bail pending trial. On October 16, 1990, a hearing was held on appeal from the magistrate's order, and defendant was ordered released to the third-party custody of her mother-in-law, guaranteed by an unsecured $5,000 bond.[4]

---

1. These yellow slips were the second set of slips placed in defendant's mail box. The first set of slips were recovered from defendant's purse after her arrest.

2. Both packages were addressed to Esperanza Aguilar, P.O. Box 5739. Box 5739 was rented to Esperanza Aguilar.

3. *See* Tr. Vol. XI pp. 20–21.

4. According to defendant-appellant, the circumstances surrounding her arrest and detention were the subject of several pretrial motions before the district court. While those issues are not presented in the instant appeal, which addresses double jeopardy issues alone, the defendant has indicated that she does not wish to waive her right to raise these irregularities on a subsequent appeal.

On September 26, 1990, a federal grand jury in San Juan, Puerto Rico, returned a two count indictment against defendant, charging defendant with unlawful possession of approximately 224 grams of cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) (count one); and with importation of the same cocaine to the United States from Medellin, Colombia in violation of 21 U.S.C. § 952(a) (count two). Aguilar–Aranceta entered pleas of not guilty as to both counts. Trial began on March 4, 1991, and concluded on March 8, 1991. The jury returned a verdict of not guilty as to importation, but was unable to reach a unanimous verdict as to possession with intent to distribute. Consequently, with the consent of both parties, a mistrial was declared as to count one.

The district court granted the government's request for a new trial. On March 18, 1991, defendant filed a motion to dismiss count one on the grounds that a second prosecution would constitute a violation of her fifth amendment right not to be twice put in jeopardy for the same conduct. This motion was denied by the district court.

Defendant filed a timely notice of appeal along with a motion to stay proceedings in the district court pending resolution in this Court. The motion to stay was granted in an Opinion and Order issued on May 23, 1991. Aguilar–Aranceta now appeals from the denial of her motion to dismiss based upon double jeopardy considerations.

## STANDARD OF REVIEW

■ We review *de novo* questions of constitutional law such as the district court's denial of a motion to dismiss the indictment on the grounds of double jeopardy and collateral estoppel. *Cf. United States v. DiPietro*, 936 F.2d 6, 8 (1st Cir. 1991).

*Legal Analysis*

A. The Double Jeopardy Clause

■ The double jeopardy clause of the fifth amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) (citing *United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)). However, the double jeopardy clause is not an absolute bar to successive trials. *Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 308, 104 S.Ct. 1805, 1813, 80 L.Ed.2d 311 (1984). The protection embodied in the Double Jeopardy Clause is a personal defense that may be waived or foreclosed by a defendant's voluntary actions or choices, including a request for or effectual consent to a mistrial. *DiPietro, supra*, 936 F.2d at 9.[5] Thus, in the context

5. *See also United States v. Dinitz,* 424 U.S. at 608, 96 S.Ct. at 1080 (Distinction between mistrials declared by the court *sua sponte* and mistrials granted at the defendant's request, or with his/her consent, is wholly consistent with the protection of the double jeopardy clause.); *United States v. Crotwell,* 896 F.2d 437, 439 (10th Cir.1990) (When a mistrial has been declared, the double jeopardy clause precludes a retrial of the defendant unless the defendant consented to the mistrial, *see United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), or unless the mistrial was compelled by "manifest necessity.") (citations omitted); *Lovinger v. Circuit Court of the 19th Jud. Circuit,* 845 F.2d 739, 743 (7th Cir.1988) (A defendant who consents to the termination of a first trial may again be put in jeopardy for the same offense, unless the conduct of the prosecutor or judge was intended to provoke the mistrial.) (citing *Oregon v. Ken-*

*nedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)); *United States v. Puleo,* 817 F.2d 702, 705 (11th Cir.), *cert. denied,* 484 U.S. 978, 108 S.Ct. 491, 98 L.Ed.2d 489 (1987) (When the defendant has moved for a mistrial or consents to its declaration, the double jeopardy clause will not bar his retrial.) (citing *United States v. Scott,* 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978)); *United States v. Rivera,* 802 F.2d 593, 597 (2d Cir.1986) (The critical double jeopardy inquiry in the mistrial context is whether the defendant sought or consented to the mistrial.); *United States v. Mitchell,* 736 F.2d 1299, 1300 (9th Cir.), *cert. denied sub nom,* 474 U.S. 830, 106 S.Ct. 94, 88 L.Ed.2d 77 (1985) (Where defendant consents to a mistrial ... the "manifest necessity" doctrine does not come into play and as a general rule retrial is permitted because defendant himself has elected to terminate the proceedings and begin afresh.)

presently before the court—retrial following the declaration of a mistrial—the key question for double jeopardy purposes is whether the mistrial was declared with the defendant's consent. *United States v. Dinitz,* 424 U.S. at 608, 96 S.Ct. at 1080. If a mistrial is declared with the defendant's consent, she is deemed to have waived any double jeopardy claim she might otherwise have. If, on the other hand, the defendant wishes to proceed to a verdict by the jury empaneled to try her, and the court declares a mistrial over her objection, the double jeopardy clause will bar the defendant's retrial unless manifest necessity required the court to so act. *Id.* The only circumstance in which the defendant's consent to a mistrial does not operate as a waiver of her right to claim double jeopardy is where the prosecutor or the judge intentionally provokes the defendant to request the mistrial. *Oregon v. Kennedy,* 456 U.S. 667, 678, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982) (citing *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)).

In this criminal trial, the defendant consented to the declaration of a mistrial. After the jury deliberated for a number of hours, it returned with notes requesting further guidance as to the definition of "possession with intent to distribute." In response, and with the agreement of counsel for the government and the defense, the judge reread the instruction as to Count One. Later, the jury returned with a note

indicating they believed they were deadlocked.[6] Once again with the agreement of the defense and the prosecution, a copy of the instruction on their duty to deliberate was sent to the jury along with their note. Finally, on March 8, 1991, the jury indicated that they had reached a unanimous verdict as to Count Two (the importation count), but were deadlocked, 10–2, as to Count One (the count of possession with intent to distribute).[7] After an in-chambers discussion during which several options were offered by the judge and discussed among the parties, the judge suggested that the verdict as to Count Two could be taken, a mistrial could be declared as to Count One, and the government would be given until the following Monday (the verdict was taken on a Friday) to determine whether the indictment as to Count One would be pursued in another trial. With no objection from either party as to this course of conduct, a verdict of Not Guilty was returned by the jury as to Count Two, and a mistrial was declared as to Count One. *See* Tr. Vol. VI p. 31; *see also DiPietro,* 936 F.2d at 10 (consent to a mistrial may be inferred from silence where a defendant had the opportunity to object and failed to do so). In view of these facts, defendant effectively waived any subsequent double jeopardy claim she might have had.[8]

## B. Collateral Estoppel

Still to be resolved here is the issue of whether the acquittal on the charge of im-

---

(citing *Oregon v. Kennedy,* 456 U.S. at 672, 102 S.Ct. at 2087); *United States v. Phillips,* 431 F.2d 949, 950 (3d Cir.1970) (Defendant who failed to object to court's proposal to discharge jury because of irreconcilable disagreement was not entitled to have indictment dismissed on the ground of double jeopardy.).

**6.** The note read:

> The jury has not reached a verdict. There is one juror who says she is not clear.

**7.** The text of the note read:

> Guided by your instructions, and after deliberating eight times, and after discussing the facts of this case we have reach[ed] an unanimous decision for Count II, but the voting for Count I is 10 to 2. The jurors do not desire to change their voting. Please advise us about this matter.

**8.** Appellant suggests in a footnote of her brief that she should not have been expected to object on the date the mistrial was declared since the government was given three days to request a retrial. We find these facts irrelevant to the issue of whether or not defendant should be deemed to have waived her double jeopardy claims. The reason a distinction is made between mistrials declared by the court *sua sponte* and mistrials granted at the defendant's request or with her consent is that a defendant has a right to receive a final judgment from the jury before which she was first placed in jeopardy. Whether or not the defendant chooses to follow this course of conduct depends on whether she feels that she has been prejudiced so during the first proceeding as to deserve a new trial, not on whether or not the prosecution will once again bring charges against her. *See United States v. Dinitz,* 424 U.S. at 608–09, 96 S.Ct. at 1080.

portation (count two) has a collateral estoppel effect on the retrial of possession with intent to distribute (count one). Although collateral estoppel is part of the guarantees of the Double Jeopardy Clause, *Ashe v. Swenson,* 397 U.S. 436, 442, 445–46, 90 S.Ct. 1189, 1193, 1195, 25 L.Ed.2d 469 (1970), this issue is separate from the application of the "same conduct" test enunciated in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), or the core concept of double jeopardy, as well as from the comparison of the statutory elements of the two crimes. *Cf. United States v. DeVincent,* 632 F.2d 155, 160 (1st Cir.), *cert. denied,* 450 U.S. 984, 101 S.Ct. 1522, 67 L.Ed.2d 820 (1981) ([T]he issue of collateral estoppel is separate from the application of the *Blockburger* test or the core concept of double jeopardy[.]) (citing *Brown v. Ohio,* 432 U.S. 161, 166–67, n. 6, 97 S.Ct. 2221, 2225–26, n. 6, 53 L.Ed.2d 187 (1977)).[9]

■ The collateral-estoppel doctrine prohibits the Government from relitigating an issue of ultimate fact that has been determined by a valid and final judgment. *Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. at 1194.[10] Collateral estoppel need not apply to a whole count but instead can control a single element of a count or a trial. *DeVincent,* 632 F.2d at 160 (citation omitted). Where a previous judgment of acquittal was based on a general verdict, courts must " 'examine the record of [the] prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter[s], and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration.' " *Ashe v. Swenson,* 397 U.S. at 444, 90 S.Ct. at 1194 (citation omitted). The Courts of Appeals have unanimously placed the burden on the defendant to demonstrate that the issue whose relitigation he or she seeks to foreclose was actually decided in the first proceeding. *Dowling v. United States,* 493 U.S. 342, 350, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990) (citations omitted). Where it is impossible to determine whether the particular issue was previously resolved in a defendant's favor, preclusive effect must be denied. *United States v. Dray,* 901 F.2d 1132, 1136 (1st Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 245, 112 L.Ed.2d 204 (1990) (citing *United States v. González–Sanchez,* 825 F.2d 572, 583–84 (1st Cir.), *cert. denied sub nom,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Ranney,* 719 F.2d 1183, 1187 (1st Cir.1983); *United States v. DeVincent,* 632 F.2d 147, 154 (1st Cir.), *cert. denied,* 449 U.S. 986, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980).

■ In the present case defendant was charged in a two count indictment. The first count charged possession with intention to distribute approximately 224 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). The elements of that offense, as were instructed to the jury, are:

1. That the defendant knowingly and willfully possessed cocaine as charged; and

2. That she possessed cocaine with the intent to distribute it.

To "possess with intent to distribute" simply means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

The second count charged importation of approximately 224 grams of cocaine in violation of 21 U.S.C. § 952(a). The elements of that offense, as were instructed to the jury, are:

---

**9.** The *Grady* test follows the *Blockburger* test in a traditional double jeopardy inquiry. *Grady v. Corbin,* 110 S.Ct. at 2090.

**10.** In *Ashe v. Swenson,* Ashe's acquittal in the first trial foreclosed the second trial because, in the circumstances of that case, (two people robbed five poker players at the same time) the acquittal verdict could have only meant that the jury was unable to conclude beyond a reasonable doubt that the defendant was one of the robbers. A second prosecution was impermissible because, to have convicted the defendant in the second trial, the second jury had to have reached a directly contrary conclusion, i.e., that the defendant was one of the robbers. *Id.* at 445, 90 S.Ct. at 1195.

1. That the defendant knowingly and willfully imported the cocaine into the customs territory of the United States; and

2. That the defendant imported said cocaine from a place outside of the United States. •

Defendant submits that in order to have acquitted her as to Count Two, the jury must have necessarily found that she did not know the contents of the two packages she received at the post office. Thus, Count One of the indictment must be dismissed since the government is estopped from proving an essential element of the offense—"knowledge of the content of the packages"—because this issue has already been decided in favor of the defendant in the acquittal issued by the first jury as to count two.

There is no question that the issue of whether defendant knew the contents of the two packages would be litigated in the second trial—this being an element of the offense of possession with intent to distribute.[11] There is also no question that this was an issue before the jury in the first trial. However, we must now determine whether this issue was actually and necessarily decided by the jury in favor of the defendant when it acquitted the defendant of the importation charge. In other words, does the acquittal by the jury on the importation count represent a jury determination that she did not know the contents of the two packages? We think it does not.

Defendant cites a number of factors in support of her theory. First, she submits that no other theory, apart from the appellant's knowledge as to the contents of the packages, was advanced by the government to prove her criminal intent in connection with the importation charge. Second, defendant submits that the government's evidence consisted solely of showing defendant's behavior in the post office. Third, defendant's defense was grounded on her lack of knowledge as to the contents of the packages, thus, a jury acquittal must mean that they believed her defense. And last, defendant argues that the admission of her prior guilty plea in a similar case was for the purpose of establishing defendant's knowledge as to the content of the package.[12] Thus, defendant contends that since the parties stipulated that the envelopes contained a controlled substance; that they were mailed from Colombia; and that they were intercepted by a Customs mail specialist in the customs territory of the United States, thus establishing the second element of the importation offense, the only way she could have been found innocent of importation was through a jury finding that she did not have knowledge of the contents of the package.

We find several flaws in defendant's arguments. First and foremost, if the jury acquitted the defendant on count two based on a determination that she had no knowledge as to the contents of the packages, it seems to us that an acquittal as to count one would have necessarily followed since knowledge as to the contents of the packages is an element of the offense of possession with intent to distribute. Since we assume in our review of the record that the jury acted rationally, *Ashe v. Swenson*, 436 U.S. at 444, 90 S.Ct. at 1194, we cannot find that a rational jury could have been so inconsistent as to find "no knowledge" as to one count, and "knowledge" as to the other. *United States v. White*, 936 F.2d 1326, 1329 (D.C.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 381, 116 L.Ed.2d 332 (1991)

11. In the second trial the government would be trying defendant for possessing with intent to distribute the same cocaine she was charged with importing—the cocaine contained in the two packages she picked up at the post office. Hence, her knowledge as to the contents of those same two packages would necessarily be at issue.

12. Evidence was admitted regarding a prior guilty plea entered into by the defendant for similar charges in 1986. Defendant was arrested for receiving packages carrying controlled substances. At that time defendant admitted having agreed to receive correspondence from Colombia for another person, and getting paid $500 each time she did so. Defendant plead guilty to a single count of simple possession of a controlled substance.

This evidence was admitted for the purpose of proving that defendant knew the contents of packages and had the necessary intent to commit the crime.

(citing *cf. United States v. Powell*, 469 U.S. 57, 68, 105 S.Ct. 471, 478, 83 L.Ed.2d 461 (1984)); [13] *see also United States v. Bennett*, 836 F.2d 1314, 1317 (11th Cir.), *cert. denied*, 487 U.S. 1205, 108 S.Ct. 2847, 101 L.Ed.2d 884 (1988); *United States v. Hogue*, 812 F.2d 1568, 1582–83 (11th Cir.1987).

Second, a review of the elements of the offense of importation shows that the government must prove more than mere knowledge. It must also prove a willfulness to import the controlled substance into the country, and that the defendant actually imported that substance into the country. Defendant herself states over and over again in her appellate brief that the government limited itself to merely proving "knowledge of the contents of the packages," and neglected to substantiate with any evidence the "willful" element of the offense. Hence, it follows that the jury could have found that although the defendant knew it was cocaine, she did not cause it to be imported into the United States, and therefore, did not willfully introduce it into the customs territory of the United States. This finding is warranted in light of the instructions given by the district court which differentiated knowingly from willfully as follows:

> The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, and not because of mistakes or accident. The world (sic) "willfully," as the term is used in these instructions from time to time, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids—that is to say, with bad purpose either to disobey or disregard the law.

(Tr. Vol. X p. 47). If the government submitted no evidence as to the defendant's possible other dealings with Colombia, or as to her having caused the controlled substance to be imported, it is completely plausible that the jury found the defendant lacked the specific intent to commit the crime.

Moreover, a finding of knowledge on the part of the jury would be consistent with the deadlock as to the charge of possession with intent to distribute. The court instructed the jury that "'To distribute' means to deliver a controlled substance to the possession of another person which, in turn, means the actual, constructive or attempted transfer of a controlled substance." (Tr. Vol. X p. 43). The jury could have found that the defendant knew the contents of the packages, but deadlocked as to the element of distribution.

 Only an unequivocal showing that the issue sought to be foreclosed by the defendant from subsequent reconsideration was definitely, and necessarily decided by a jury in a final judgment, and in the defendant's favor, will convince us to collaterally estop the government from relitigating that issue in the second trial. We find that defendant has not made such a showing. When a " 'fact is not necessarily determined in a former trial, the possibility that it may have been does not prevent re-examination of that issue.' " *United States v. Boldin*, 818 F.2d 771, 775 (11th Cir.1987); *United States v. Lee*, 622 F.2d 787, 790 (5th Cir.), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981) (emphasis on original) (citations omitted). Defendant here has only shown the possibility that the jury might have determined that the defendant did not have knowledge of the contents of the packages she received. This is not enough to estop the consideration of this issue in the second trial. The decision of the district court is

*Affirmed.*

___

**13.** In *United States v. White* the court held that the fact that the jury acquitted defendant in the first trial of possessing an unlawfully issued birth certificate with intent to defraud the United States did not show that it found the defendant lacked the necessary knowledge or intent or that the jury found that defendant believed his client to be the person named in the birth certificate. Thus, the court did not collaterally estop the government from bringing a second prosecution based on defendant's knowledge that the client was not the person named—if jury had actually found that defendant believed the client to be the person named, it would also have acquitted him of the second charge, whereas here it did not. *Id.* at 1329.